Claudette McGhee, Pro Se
Post Office Box 3268
Hagatna, Guam 96932
cmcghee1@netpci.com
Phone: (671) 477-9128

FILED
DISTRICT COURT OF GUAM
MAY 15 2007
MARY L.M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM
### TERRITORY OF GUAM

| | | |
|---|---|---|
| Claudette McGhee, Plaintiff | ) | Civil Case No 07-00012 |
| | ) | |
| Vs | ) | COMPLAINT |
| | ) | FOR DISCRIMINATION |
| Guam Community College, Board of | ) | |
| Trustees (Members), Dr. Herominando | ) | (Jury Trial Requested) |
| Delos Santos, President, Dr. John Rider, | ) | |
| Academic Vice President and Mr. Gary | ) | |
| Hartz, OSD. Administrator, Defendants | ) | |

1. This Complaint is brought by Plaintiff, Claudette McGhee, Pro Se alleging that each of the above named Defendants, Board of Trustees Members, Dr. Herominiano delos Santos, Dr. John Rider and Mr. Gary Hartz, discriminated against her because of her race (African American), her age (67), and her national origin (U.S. American- off island citizen) by maliciously and wrongfully terminating her from her Program Specialist position alleging incompetence and insufficiency that resulted from a ninety (90) day subjective Performance Evaluation report after more than twenty six (26) years of satisfactory work performance for the college.

### JURISDICTION

2. This action arises under Title VII of the Civil Rights Act of 1964, as amended; Title 42 U.S.C. Section 1981 and 1985; Title 42 U.S.C. Section 2000e-2, 5 (f) (3); et.seq.;

3. This court has jurisdiction of this case pursuant to Title 42 U.S.C. Section 2003, et seq,; the Age Discrimination in Employment Act of 1967; Title 29 U.S.C. Section 621, et seq.; the Civil Rights Act of 1866; Guam Community College Administrative Directive 95-001 –Performance Evaluation Standard Operation Procedure) GCC Affirmative Action Policy Statement and their Non-Discrimination policy.

Page 1

4.  This original Complaint was brought before the Honorable Judge Joaquin V.E. Manibusan on May 24, 2006 and on September 26, 2006 Defendant filed a Motion insufficient process and insufficient service. *The Court granted Defendant's Motion to dismiss Plaintiff's Complaint of Discrimination for insufficient service and insufficient service on December 22, 2006. The Court dismissed the complaint without prejudice and entered the Judgment on the Docket on December 26, 2006.*

5.  Plaintiff, Claudette McGhee now re-files this Complaint of discrimination against Defendants, Guam Community College Board of Trustees Members, Dr. Herominiano delos Santos, President; Dr. John Rider, Academic Vice President and Mr. Gary Hartz, Office of Student Development administrator for compensatory and punitive damages, restoration of all benefits inclusive of accrued sick and annual leaves, loss of wages, mental and emotional stress and the legal interest rate to a date as determined to be equitable by the Court for the resulting actions of malicious discrimination and wrongful termination. Plaintiff, Claudette McGhee further request the court to order defendants to comply with the Guam Community College Personnel Rules and Regulations-Section regarding contractual employment and their equal employment opportunity policies and legal statutes.

6.  The basis issues arising from this complaint is **disparate treatment, disparate impact, harassment, retaliation and age, race & national origin.** The Defendants failed to provide Plaintiff, Claudette McGhee reasonable care and the protection from being subjected to discriminating treatment, harassment and a hostile working environment.

7.  Plaintiff, Claudette McGhee was continuously over a period of two (2) years subjected to hostile treatment under the supervision of defendant, Mr. Gary Hartz, abused his authority as supervisor to degrade, demoralize and humiliate defendant, Claudette McGhee through conflicting assignments, cancellation of projects and betrayal.

## **PARTIES**

8.     Plaintiff, Claudette McGhee is a citizen of the United States of America and a resident of the Territory of Guam since August, 1968. She is an African American who holds two degrees a Bachelor of Science and a Master of Education with thirty two (32) graduate credits in educational administration. Additionally, Plaintiff is a licensed Individual Marriage and Family Therapist. Plaintiff, Claudette McGhee has over fifteen (15) years of teaching experience, twelve years (12) years counseling experience, and twenty seven (24) years as an education administrator. Plaintiff, Claudette McGhee sought employment with the Defendant and was employed by Guam Community College, on December 21, 1978 to fill the federally funded School Program Consultant, Adult Basic Education position. The defendant, Guam Community College Board of Trustees approved the position title School Program Consultant be changed to Adult Education Program Specialist on August 26, 1979. Plaintiff resides in the village of Mongmong, Toto, Maite, Guam 96932 since May, 1972.

9.     Defendant, Guam Community College is a semi-autonomous government of Guam agency operating under a Board of Trustees and is the only local two-year Community College in the Territory of Guam and was the employer from whom Plaintiff sought employment at all times herein relevant.. Guam Community College has its principal place of business at sesame street in the village of Mangilao, Guam.96921

10.    Guam Community College, Defendant, Dr. Herominiano delos Santos, (hereinafter " Dr. delos Santos is a Filipino/Chamorro American and a citizen of the United States of America and a resident of the Territory of Guam, and is employed in the position of President for Guam Community College since 2000.

11.    Defendant, Dr. John Rider (hereinafter "Dr. Rider) is a Caucasian American and citizen of the United States of America and a resident of the Territory of Guam employed in the position of Academic Vice President for the college.

Page 3

12. Defendant, Mr. Gary Hartz (hereinafter "Mr. Hartz), is a Caucasian American, citizen of the United States of America and a non-resident of Guam as of January 2002, employed as an off-island contractual employee August, 2002 to fill the position of Resident Life Administrator (first level administrator). The college promoted defendant, Mr. Hartz, on January, 2003, to fill the newly created administrator's position for the newly developed Office of Student Development.

13. The Guam Community College, Board of Trustees members, Adolf P. Sgambelluri, Chairperson, Antonio B. Jesus, Forest M. Harris, Jonathan F. Carriaga, Gregory D. Perez and Patrick A. Watson are the true names of the Board Members present at the informal Appeal Hearing and Plaintiff will frequest leave of the court to subsequently amend this complaint to include individuals omitted as soon as their identities become known to Plaintiff. Plaintiff alleges that the above named defendants are in some way responsible and liable for the discriminating acts herein alleged in this complaint.

## FACTS

14. Defendant, Guam Community College is an employer (agency) within the meaning of Title 42 U.S.C 2000e and Plaintiff, Claudette McGhee, was an employee of the college within the meaning of Title VII of the Civil Rights Act of 1964-Section 42 U.S.C.-Section 2000e.

15.. Defendant, Guam Community College is engaged in the business of providing public vocational education to the Territory of Guam and is engaged in commerce within the definition of title 42 USC 2000e. The college operates secondary and post secondary vocational programs, adult and continuing education, community education and short term specialized education.

16. The Defendant, Guam Community College had employed only two (2) full-time African American administrators and for approximately the last ten (10) years Plaintiff was the only full-time African American employed at the college.

Page 4

17. Plaintiff complaint is an action for compensatory and punitive damages in excess of her annual salary. Plaintiff was issued a letter from the Equal Employment Opportunity Commission to sue defendants on February 28, 2006.

18.. The defendant, Dr. delos Santos approved the promotional appointment of defendant, Mr.Gary Hartz to fill the newly created position "administrator" for the newly developed Office of Student Development. This new administrative position was not advertised nor published on the college campus.

19. Plaintiff, Claudette McGhee contends that she was equally qualified for the promotional OSD administrator's position and was a permanent first level administrator and had been employed with the College as an administrator for the past twenty five (25) years The promotion of defendant, Mr. Gary Hartz, assigned to the position administrator for the newly created Office of Student Development replaced both Plaintiff's administrative duties and the Campus Life Office programs and staff through the transfer, reorganization and restructuring of the Campus Life office and programs.

20. The newly created OSD administrator's position and the Office of Student Development was not approved by the Board of Trustees or an approved budget position.

21. Plaintiff, Claudette McGhee contends that the newly created Job Description by defendant, Mr. Gary Hartz was a demotion of her duties and responsibilities as a program administrator.

22. Plaintiff, Claudette McGhee informed the defendants, Dr. delos Santos and Dr. Rider that the described job tasks was a demotion of her administrative duties as Program Specialist and the Office of Student Development replaced both the Campus Life Office programs and staff.

23. Plaintiff, alleges that the defendants, Dr. delos Santos and Dr. Rider were fully aware of the problems, conflict and hostility arising from the abusive authority exercised by defendant, Mr. Gary Hartz over Plaintiff as her supervisor regarding the conflict of roles and responsibilities that resulted from the Campus Life programs and staff being

replaced with the Office of Student Development programs and staff.

24. Plaintiff contends that each of the defendants, Dr. delos Santos and Dr. Rider refused to provide the support needed to protect her from the discrimination and abuse she was being subjected to in the workplace under the supervision of Mr. Gary Hartz.

25. Plaintiff contends that she asked defendant, Dr. delos Santos if she could be transferred or assigned to any other program or department within the college to prevent the continued hostile discriminating treatment that she was being subjected to under the supervision of defendant, Mr. Gary Hartz, (since this President had provided such transfers for other employees under his administration) however, the defendant, Dr. delos Santos denied Plaintiff, Claudette McGhee's request.

26. Plaintiff, Claudette McGhee argues that the defendants failed in providing her equal employment opportunities, equal rights and privileges as afforded other GCC employees who are similar situated in positions of administration and manager of programs or projects.

27. Plaintiff contends that the defendant, GCC President Herominiano delos Santos denied her access to the Step III Appeal Grievance Process to appeal the unsatisfactory performance rating and proposed termination received from defendant, Mr. Gary Hartz under his supervision.

28. Plaintiff contends that the defendants, Dr. Herominiano delos Santos, Dr. John Rider and Mr. Gary Hartz the Academic Vice President and the Office of Student Development administrator conspired together to subject Plaintiff to discriminating conditions of work because of her race, age and national origin in an effort to force her to retire.

29. Plaintiff contends that the defendant, Dr. delos Santos removed her from the Ghandi, King, and Ikeda planning committee because of her race, and replaced her membership with Mr. Gary Hartz. and requested that she provide all information and assistance to defendant, Mr. Gary Hartz in planning the GCC program.

30. Plaintiff, Claudette McGhee contends that defendant, Dr. John Rider assaulted her in her GCC office room number 2222 by placing his finger in her face and threatening to have her fired, if she did not provide defendant, Gary Hartz the assistance needed in planning the event and the telephone numbers and names of the Ghandi, King and Ikeda planning committee by a specific date and time in which Senator Judy Wonpat was the Chairperson of the committee.

## FIRST CAUSE OF ACTION- (Disparate treatment)

31. Plaintiff, Claudette McGhee hereby repleads paragraph 1 through 30 as stated in this complaint and incorporates them by reference.

32. Plaintiff, alleges that she was qualified and was performing satisfactory work for each of the three (3) positions from which she was involuntarily transferred and exceeded the qualifications of the individuals who replaced her as the Adult Education Program Specialist and Campus Life and equal qualification for those employed in the positions that were unannounced.

33. Such unannounced positions included the administrators for the Office of Student Development and the Service Learning/Civic Engagement Program Specialist position.

34. At all times relevant hereto, Plaintiff, Claudette McGhee was performing the administrative work as the Program Specialist for the Service Learning Program when she was replaced by the new employee, San Mabini Souza .

35. Additionally, Plaintiff, Claudette McGhee contends she was performing the administrative duties for the Campus Life program satisfactory in which the administrative duties and staff were transferred to the defendant, Mr Gary Hartz as the administrator of the Office of Student Development programs.

36. .The Office of Student Development, administrator discriminated against her and treated her differently during several occasions. The acts of disparate treatment occurred as follows:

37. The first initial act occurred during the October 2000 meeting with the defendant,

defendant, GCC president and in attendance were the Academic Vice President , the School of Technology Dean and the Dean of Trades and Professional services, at this meeting, The President offered Plaintiff a contract of employment if she retired not later than December 2000. Plaintiff did not retire. Approximately two (2) weeks following Plaintiff's refusal to retire, Plaintiff was involuntarily transferred from the position of employment, Adult Education, Program Specialist to an assigned task.

38. Plaintiff's responsibilities as the Adult Education, Program Specialist was to serve as the administrator, responsible for the overall planning, coordination, communication, supervision, management and accountability of the program budgets, recruitment of staff and faculty, developing basic skills course guides and conducting the implementation of adult education course offerings.

39. January 2003, Plaintiff was assigned the task of creating, developing and produced to writing a Service Learning program for the College. The college employed Barbara Jacala to fill the Adult Education, Program Specialist position and assigned Plaintiff as the Service Learning Program Specialist. While serving in the administrator's position for the Service Learning program, the college employed Sam Mabini Souza to fill the position of Service Learning Program Specialist.

40. Plaintiff was serving as the Serving Learning Program Specialist, in January, 2002 she was assigned the additionally task of developing a management plan for student governance and student organizations to include and an accountability procedure for funds appropriated to the Campus Life Office.

41. Plaintiff was officially assigned to serve as the administrator for the Campus Life programs October 30, 2002. As the administrator she was responsible for taking the lead in providing guidance, leadership, administration & supervision over student governance and student organizations, coordination of student activities, program, preparation of budgets, recruitment of staff, and the management and accountability for the Pacific Island Endowment grant and college appropriated student activity fees.

Page 8

42. Plaintiff contends she was the only permanent full-time administrator that the college has involuntarily transferred three (3) times without transitional training or mentoring for the positions to which she was transferred.

43. Plaintiff, further contends that she was the only full-time permanent administrator ever to be placed on a ninety (90) day probationary performance evaluation period with the stipulation that employment would be terminated if the assigned work tasks were not performed satisfactory during the ninety (90) day evaluation period, without stipulating that the performance evaluation would comply with the Guam Community College Administrative Directive-Performance Evaluation Standards.

44. The defendant, GCC President approved the promotional appointment of defendant, Mr. Gary Hartz to serve in the position of OSD administrator without the benefits of recruitment or posting any announcements for the position. This new administrative position was not advertised nor published even on the college campus.

45. Plaintiff contends that the College promotion of defendant, Mr. Gary Hartz, a six (6) months off-island contractual employee to fill the administrator's position in which she was equally qualified and was a permanent employee with the college discriminated against her because of her race, age and national origin and violated the Guam Community College equal employment opportunity act, the age in discrimination act of 1965 and the GCC personnel Rules and Regulations –Sections Appointments and Assignment

46. Plaintiff further contends that the defendant, GCC President maliciously invaded her personal privacy in his actions of directing a Process server to deliver a Dismissal memo to her home wherein she was on sick leave from which she suffered cardiac problems, high blood pressure and migraine in which the college has medical reports to attest to these facts.

47. Plaintiff contends that the defendant, GCC President's total disregarded for her

Physically health, even with being knowledgeable of her illness, his actions of coming to her home to serve the Dismissal memo, contributed to her suffering extreme emotional distress and delayed physical recovery.

48.    Plaintiff alleges that the defendant, GCC President discriminated against her in all the actions stated above and denied her equal protection from a hostile working environment. Additionally, Plaintiff alleges that the notice of Dismissal imposed a second punishment in that it was an extension of punishment attached to the wrongful suspension that was issued in his memo of May 26, 2005, (the defendant, GCC President states) "I issued you (Plaintiff) an Adverse Action which resulted from a ten (10) day suspension without pay on August 24, 2004 to September 6, 2004 for inefficiency in performing your job.. I also informed you that when you return to work from your suspension, you will be presented with specific duties and responsibilities that will be required of you for the next ninety (90) days. Your overall job performance will be evaluated after the ninety (90) days. Failure to satisfactory perform your job will result in termination of your employment with the college," (*incorporated for reference see Attachment No (1) Adverse Action memo* ~~May 26, 2005~~) *am.* August 16, 2004

49.    Plaintiff was issued a memo on November 17, 2004 from defendant, Mr. Gary Hartz entitled, " Responsibilities and Expectations" which is (*incorporated for reference see Attachment No (2) Responsibilities and Expectations* ~~May 26, 2005~~) Nov. 17, 2004 am "The attached document serves to specify the responsibilities you are expected to enact within the next eighty six (86) days within the Office of Student Development at Guam Community College. As you're primary responsibility is to manage Campus Life.

50.    Plaintiff contends that the Campus Life office staff, programs, budget and administrative responsibilities were all transferred to the Office of Student Development under the administrative supervision of defendant, Mr. Gary Hartz, therefore, Plaintiff's administrative responsibilities for the Campus Life programs were eliminated through the

Page 10

re-organization of the Campus Life office and the newly developed Program Specialist duties, as described in the Responsibilities and Expectations memo submitted by the defendant, Mr. Gary Hartz.

51. Plaintiff's newly developed responsibilities and expectations, are, "to assist with programs and initiatives throughout Student Development, and on campus in general… many of the responsibilities presented … will require your in-depth collaboration with the Student Development Administrator, the Program Coordinator II, the Civic Engagement Program Specialist and the Administrative Aide." There are thirteen (13) performance tasks, they are incorporated for reference in the attachment section of this complaint (*see Attachment No ( 4 )Responsibilities and Expectations November2004- March 2005).*

52. Plaintiff contends that defendant, Mr. Gary Hartz, created conditions of harassing Plaintiff in provided performance tasks whose objectives were ambiguous, unclear and difficult to measure satisfactory accomplishment, one such activity is as follows:

> "Assess to what extent each student organization meets the needs of both its members and its target population. Identify what kind of specific training each individual organization requires in order to best serve it target population and membership. Submit this information in a training report by December 3, 2004."

53. Plaintiff contends that her removal from Ghandi, King, and Ikeda Committee was demoralizing, professionally insulting and discriminating because of her race.. Such remarks consisted of, "you are being removed from the Ghandi, King, Ikeda committee because the president doesn't want you to represent the college" and the Academic Vice President is not approving funding to conduct a second youth conference for the same reason." Plaintiff, states that she endured daily rejections and emotional suffering to the extent that she now suffers a permanent physical condition and emotional scars that has endured to date.

## SECOND CAUSE OF ACTION- (Disparate Impact)

54. Plaintiff contends that the involuntary transfers, reassignment of programs, and the reorganization of the Campus Life Office staff and programs, gave rise to Plaintiff being denied subsequent transitional on-the –job training, professional development workshops, appointments to college committees, job advancement opportunities and off-island program development conferences.

55. Plaintiff further contends that the college deprived her of the recognition for the program successes derived from her initiated work, the educational growth and self confidence acquired from continuity of work assignments and the loss of professional respect from the college staff and community leaders from whom she had worked for or associated with for over fifteen (15) years on this island..

55. Plaintiff contends that the GCC President's denial of the opportunity to access the Guam Community College Step III Grievance Procedure Hearing Committee that resulted in termination of her employment from the college, effective June 10, 2005, negatively influenced the Guam Community College Board of Trustee response in their decision to hear her appeal regarding the unsatisfactory performance evaluating that resulted in termination of employment prior to the hearing before the Board of Trustees.

56. Plaintiff transmitted a memo to the president appealing the unsatisfactory performance rating for review and response to the defendant's Dr. delos Santos request regarding the unsatisfactory performance.

57. Plaintiff contends pursuant to the Guam Community College Step III Grievance Procedure, the Defendant, Dr. delos Santos was required to appoint a Hearing Committee to review the complaint, however, the defendant, Dr. delos Santos abused his authority and rushed to judgment in terminating Plaintiff Claudette McGhee's employment with the college.

58 Plaintiff contends that this action of termination was discriminating and violated

Page 12

the Guam Community College Personnel Rules and Regulations-Section 306.07 (c) Grievance Procedure Step III, which states:

> " The president shall appoint a Hearing Committee, within three (3) days after the Provost receives the appeal, he shall refer the grievance to the Hearing Committee. ... If the decision of the Hearing Committee is accepted by both parties , the decision shall be implemented and the matter closed.." incorporated for reference (*See Attachment no.(2) President's termination Memo).*

59. Plaintiff was further discriminated against by defendant Dr. delos Santos GCC President in his actions of involuntary transferring her from the position in which she was initially employed, after refusing his offer to retire.

60. The Academic Vice President attended the October 2000 meeting with the President and observed Plaintiff refusing the President's offer to retire which resulted in Plaintiff being transferred from administrating the Adult Education program and a new employee (Barbara Jacala) was hired and assigned to the position of Adult Education Program Specialist.

61. Plaintiff was assigned the task of developing a Service Learning program, During the second year of implementation, the program became successful and it was approved by the Board of Trustees. Thereafter, the college received a GEMS federal training grant that provided for project staff to receive both on and off-island training. The college only denied Plaintiff the off-island training, yet provided off-island training for tall other project staff. The grant provided funding for off-island training for project administrative staff and other key faculty members named in the grant.

62. While Plaintiff was assigned and holding the position as the Program Specialist for the Service Learning program, the college employed and assigned Sam M. Souza as the Serving Learning Program Specialist. Plaintiff was then assigned an additional task to develop a management and accountability procedure for college funds and the Pacific Island Endowment grant that was appropriated to the Campus Life programs.

Page 13

McGhee vs. GCC, Defendants

Case N0: CV_____

63. Plaintiff contends that the defendants conspired together to harass, demoralize, discredit and intimate her in an effort to force her to retire. Such actions included involuntary transfers and reassignment of programs they were:
- Transferred from the Adult Education program to the Service Learning program
- Transferred from Service Learning program to Campus Life Programs
- Transferred from Campus Life program to Office of Student Development

64. Plaintiff further contends that the transfers, program reassignments and the development of the new administrator's position description discriminated against Plaintiff and the treatment damaged her professional reputation, denied her equal employment opportunities, equal training, professional growth experiences and job promotions comparable to other employed GCC employees.

65. These Defendants actions were intentional and willfully designed to harm Plaintiff, denying her professional growth opportunities, and training that could lead to competitive skills in the application of promotional job opportunities at the college.

66. After being officially assigned October 2002, the administrative position for the Campus Life programs the college on January 2003 transferred these programs and responsibilities to the newly created Office of Student Development administrator and placed Plaintiff under his supervision.

67. Defendant, Mr. Gary Hartz was promoted by the college as the administrator after being employed for only six (6) months as an off-island contractual employee. Mr. Gary Hartz was employed in August, 2002 to fill the position of Resident Life Administrator, the Typhoon came in December, 2002 and the Residental Life Administator's job was terminated.

68. In this administrative position, Mr. Hartz was provided management approval to develop a new job description and work task, for Plaintiff under his supervision, the job description is incorporated by reference *(See Attachment no. 3 Plaintiff's Job description).*

Page 14

69.     These transfers and reassignments were discriminating and deprived Plaintiff of profession growth opportunities that occurs with continuity and structure, trainings, attendance at professional meetings, and off-island conferences and workshops. The college has provided other employed Program Specialist and Program Managers who are similar situated in positions of employment such continuity of assignment.

70.     Plaintiff alleges that the involuntary transfer actions and assignments were in violation of Guam Community College Personnel Rules and Regulations, Section 346.00 Transfer Sections 346.02 (a), (b), (c), (d) are incorporated by reference *(See Attachments No 1- GCC Personnel Rules and Regulations Section 346.00-Transfer)* and Section 344.00 Assignments-Sections 344.03 (a), (b), (c) & (d) *(See Attachments No 2- GCC Personnel Rules and Regulations Section 344.00-Assignments*

71.     Plaintiff contends that she was the only Program Specialist to be involuntarily transferred from among the seven (7) additional Program Specialist. Each has retained their initial program assignment from the date of employment, without being subjected to involuntarily transfers or different program assignments. Plaintiff contends that she was the only African American full time administrator employed at the college and alleges that the involuntary transfers and program reassignments were because of her race, age and national origin, The additional Program Specialist are:

a.      Terry L. Barnhart, B. A Sociology –Work experience & Training
b.      Wesley T. Gima, A.S- Mangement-Instructional Technology
c.      Daniel L. Guerrero, M.B.A-Regional Planning-Assessment
d.      Joanne A. Ige, B.S. & M.S.Criminal Justice – Trio
e.      Barbara Jacala, B.A. Communications-Adult Education
f.      Christine B. Sison M.P.A.-Public Administration-Career Placement
g.      Shirley M. Souza, B. S. Management, M. Ed. Service Learning.

These listing of employees from the Guam Community College Catalog are incorporated by attachments. *( See Attachment No. (2) -2004-5- GCC College Administrators)*

72. Defendant, Mr. Hartz reprinted the Campus Life programs brochure and published an Office of Student Development programs brochure which listed the Campus Life Programs, incorporated by reference (*See Attachment no. 4 Office of student Development Brochure*).

73. As a consequence of such treatment, Plaintiff suffered progressive attacks of high blood pressure that progressed to an aneurysm, hospitalizations, loss of professional respect from employees and the loss of wages which rendered her unable to contribute to the care of her physically ill parent.

## THIRD CAUSE OF ACTION –(Retaliation)

74. With the creation of the new program Office of Student Development and the appointment of the administrators, Plaintiff made complaints to management that the duties were duplicated that caused conflict and resentment.

75. Defendant, Mr. Gary Hartz in his capacity as administrator, assumed the total administrative responsibilities and decision making authority for the administration, management and supervisory responsibilities of the Campus Life Program.

76. Defendant, GCC President failed to provide Plaintiff the equal protection and equal opportunity of a conducive working environment through his actions of:

- ☑ *Transferring the Campus Life programs to the OSD Administrator including the leadership, decision making authorities, program budget, administrative and supervisory duties over student governance and student organizations.*
- ☑ *The President and the Academic Vice President reassigned Plaintiff's administrative and supervisory responsibilities for the Campus Life programs to Mr. Gary Hartz to include program budget, student governance and student organizations.*
- ☑ *The OSD Program coordinator was assigned student leadership development training activities, new student orientation, "Meet Your President" and supervision of Student Governance and Student Organizations records and files.*
- ☑ *Plaintiff was assigned support duties and to act as the liaison to student organizations and student governance during their organizational meetings and provide assistance to both the OSD administrator and OSD program coordinator as needed.*

Page 16

McGhee vs. GCC, Defendants
Case N0: CV_____

77. Pursuant to Section 4441 Guam Code Annotated, " The defendant, GCC President is overall responsible for the safety and protection of all of its employees, " and to provide equal treatment granted by the GCC Affirmative Action Policy Statement, the Equal Employment Opportunity Act of 1967; title VII of the Civil Rights Act of 1964 and its amendments; the age discrimination in Employment Act and the Guam Community College Personnel Rules and Regulations-Sections Due Process, Appointments, Transfers and Assignments

78. The President acted in haste with malicious intent to render harm to Plaintiff through his actions of serving Plaintiff at her home the notice of "Dismissal" while on sick leave, as a result of a ninety (90) day subjective performance evaluation report. Plaintiff had an accumulation of more than seventeen hundred (1700) hours of unused sick leave. Plaintiff's annual performance evaluation report for a period of twenty six (26) years with the college has been rated satisfactory work performance as an administrator with the college. Plaintiff contends that the termination was a conspiracy between management and the Plaintiff's supervisor in an effort to provide funding for defendant, Mr. Gary Hartz continued employment at the expiration of his contract.

79. Plaintiff alleges that she has been the only full-time African American employee of the college for more than fifteen (15) years. Plaintiff alleges that it appears to have been easy for defendants to terminate Plaintiff being she was the only African American employed as a full time employee at the college.

## FOURTH CAUSE OF ACTION ( Harrasment)

80. Plaintiff's supervisor, Mr.Gary Hartz reported that her performance on each of the assign tasks were unsatisfactory. The Responsibilities and Expectations failed to explain the standard and describe the percentage of work required for each task to be rated as satisfactory performance. An additional problem existed where some of the listed tasks required the voluntary participation of students and staff to accomplish satisfactory performance.

Page 17

81. Plaintiff contends that defend ant, Mr. Gary Hartz, did not allow a reasonable amount time , counsel or corrective actions in a time manner to achieve performance expectations for each task, Plaintiff, states, that she was informed at the conclusion of the ninety (90) day evaluation period that she had failed to achieve satisfactory performance in each and all assigned areas of work.

### FIFTH CAUSE OF ACTION- (Race, Age & National Origin)

82. Plaintiff contends that the President and the Academic Vice President discriminating actions subjected her to disrespect, and demoralizing experiences among staff, students and community leaders because of her race, age and national origin through. the President and Vice President canceling her participation as a committee member on Senator Judy Wonpat's committee and also canceled Senator Wonpat's attendance as a presenter at a student leadership workshop that was arranged by the Plaintiff.

83. The Academic Vice President discriminated in his actions of:
   a. disapproving the budget for conducting a second year student conference,
   b. purposely delayed approving the budget three (3) days prior to the conduct of a student cultural conference
   c. cancelled Plaintiff participation in a student leadership training (service learning workshop
   d. Denied Plaintiff from publishing a Campus Life program brochure
   e. Denied Plaintiff from attending the GEM's off-island training conference from which she was on the grant as the program administrator.

84. Plaintiff was provided on November 2004 a listing of thirteen (13) different tasks to perform during the duration of a ninety (90) day performance evaluation period. The listing of each assigned task and the extent to which each task was achieved is incorporated by reference in the attachment section.-*(See Attachment # 5- Performance Evaluation)*.

Page 18

85. Plaintiff alleges that defendants actions for re-organizing the Campus Life programs were pretextual and the promotional assignment of the six (6) month employed contractual employee was in violation of Guam Community College, Equal Employment Opportunity policy, affirmative Action Policy Statement and the GCC Personnel Rules and Regulations-Sections 344.03- (a), (b), (c).& (d) Assignments and Section 318.00 Contractual Appointment and Chapter 2, 4 G.C.A. Section 2107.

86. The college failed to provide Plaintiff equal training opportunities as provided other transferred employees or employees being assigned to a new program, project or job task. Mr. Hartz in his role as supervisor failed to provide the guidance, mentorship and training as needed to meet his expectations and standards of performance.

87. The employment and assignment to the positions of Program Specialist of Barbara Jacala, Sam Mabini Souza and Gary Hartz as administrator, all were provided on-the job training, mentorship and off-island professional training. The college failed to provide Plaintiff such trainings upon programs reassignments and requested that she not attend the college Program Manager's meetings and denied her the opportunity to attend off-island trainings conferences or workshops, The Supreme Court held in "loving v Virginia, 388 U.S. (1967) and Sullivan v. Little Harting, Park Inc. 396 U.S. 229 (1969) that any action based on a classification of race or privities by race are in violation of Title VII Civil Right Act of 1964 as amended.

Page 19

McGhee vs. GCC, Defendants

Case N0: CV_____

## DEMAND (PRAYER)

88. WHEREFORE, Plaintiff, Claudette McGhee, pro se prays that the court grant relief against the Defendants, jointly and individually as follows:

1. That the Court determine that the actions of Defendants violated Plaintiff's equal employment rights thus depriving her of equal treatment, training, promotions and opportunities as described herein to be unlawful:

2. That the Court award Plaintiff loss of income inclusive of accumulated annual leave, sick leave, holiday pay, medical and dental insurance coverage that resulted from wrongful termination.

3. That the Court award Plaintiff full damages proximately resulting from the Defendants' actions of discrimination, reprisal and retaliation.

4. That the Plaintiff be awarded punitive damages for the disregard of Plaintiff as a professional, her community reputation, a person, and an employee of the college.

5. That the Court order Defendant to reinstate Plaintiff in good standing and expunge all negative memos and document from personnel files.

6. That Plaintiff be awarded cost for attorney fees; (if applicable).

7. That the Court order Defendant to comply with the Guam Community College Personnel Rules and Regulation-Performance Evaluation procedures and policies.

For such compensatory, punitive and other relief as may be deemed just and proper, including health and dental insurance benefits and full credit toward Government of Guam Retirement fund to a date of reinstatement.

DATED: This 15th day of May, 2007

*Claudette McGhee*
Claudette McGhee, Pro Se
Post Office Box 3268
Hagatna, Guam 96932
Telephone: (671) 477-9128
E-mail: cmcghee1@netpci.com

Page 20

Case 1:07-cv-00012   Document 1   Filed 05/15/07   Page 20 of 20